The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. Neither party requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the deputys findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on February 13, 1996.
3. Defendant-employer was insured by Liberty Mutual Insurance Company on February 13, 1996.
4. Plaintiffs average weekly wage was $465.51 at all times relevant to this matter.
5. The following medical records have been stipulated into evidence: (a) 21 pages of documentation from Orthopedic Surgery Centers, PLC.; (b) 4 pages of documentation from Sports Medicine and Orthopedic Center, INC.; (c) 22 pages of documentation from Obici Hospital.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-eight years of age. He has a high school diploma as well as an auto mechanic certificate from a community college.
2. Plaintiff was employed by Resinall Corporation from August 1989 through December 23, 1996. Plaintiffs last position with defendant Resinall Corporation was that of resin kettle operator. Plaintiffs job duties as resin kettle operator consisted of tearing open fifty-pound bags of chemicals, using an axe to bang on drums to loosen the contents of the drums, and monitoring the kettles.
3. Plaintiff spent at least fifty percent of the time monitoring the kettles rather than banging on drums or opening bags. From May through September 1996, plaintiff did not bang on any drums nor did he open any bags.
4. On or about February 13, 1996, plaintiff first saw Dr. Kells, complaining of pain and numbness in his right hand. Dr. Kells prescribed a splint, medication, and light-duty work for plaintiff.
5. Plaintiff did not begin developing any symptoms of carpal tunnel syndrome in his left wrist until after he had been placed on light duty. At the time plaintiff first complained of soreness and numbness in his left hand, plaintiff was not performing any repetitive movement tasks.
6. In an August 8, 1996 office note, Dr. Kells indicated that the results of a Tinels test and a Phalens test were both negative. However, a September 10, 1996, EMG nerve conduction test showed moderately severe carpal tunnel syndrome in the right hand and none on the left.
7. On October 11, 1996, Dr. Kells performed a carpal tunnel release on plaintiffs right hand. In a follow-up note, Dr. Kells indicated that plaintiff could return to light duty in the beginning of December 1996.
8. After being on light duty through September 1996, plaintiff was allowed to take an unpaid leave of absence pursuant to the Family Medical Leave Act. However, when plaintiff was not able to return to work when the leave of absence expired on December 23, 1996, he was discharged.
9. Plaintiff failed to show that he was at a greater risk than the general public to develop the disease of carpal tunnel syndrome. Plaintiffs treating physicians offered no evidence that plaintiffs job as a resin kettle operator placed him at an increased risk to develop carpal tunnel syndrome compared with the employment population at large. Neither Dr. Kirk nor Dr. DiStasio testified that plaintiff was at an increased risk of contracting carpal tunnel syndrome due to his employment.
10. Dr. Cecil Neville evaluated plaintiffs job duties and concluded that plaintiffs job is a high impact/low repetition job, similar to a carpenters job. Dr. Neville testified that in his opinion a high force/low repetition job would not cause carpal tunnel syndrome and that plaintiff was not at a greater risk to develop carpal tunnel syndrome compared to the general public.
11. A review of defendant-employers records shows that no other resin kettle operators developed carpal tunnel syndrome while working at defendant-employer.
12. Plaintiffs job with defendant-employer did not place him at an increased risk to develop carpal tunnel syndrome.
13. The pain and numbness in plaintiffs hands did not develop as a result of an injury by accident arising out of and in the course of his employment.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs carpal tunnel syndrome did not result from an injury by accident arising out of and in the course of plaintiffs employment with defendant-employer. N.C.G.S. 97-2(6).
2. Plaintiff has no disease, and no disability related to causes and conditions which are characteristic of and peculiar to plaintiffs employment with defendant-employer. Plaintiffs employment did not expose him to an increased risk of developing the disease compared to members of the general public. N.C.G.S.97-53 (13).
3. Plaintiff is, therefore, entitled to no compensation under the North Carolina Workers Compensation Act. N.C.G.S. 97-2(6); N.C.G.S. 97-53(13).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim for workers compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER